|   |   |
|---|---|
| IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA | |

DANILO MALLARI,

    Plaintiff,

  v.

TRACY VESSIGAULT, et al.,

    Defendants.

Case No. 13-cv-04038-CW

ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

(Dkt. No. 73)

Plaintiff Danilo Mallari sues under 42 U.S.C. § 1983. On December 4, 2017, Defendants Tracy Vessigault, Diana Marana, Doris Jordan, and Collene Traynor brought this motion for summary judgment on Mallari's claims. Mallari filed an opposition and Defendants filed a reply. The Court hereby DEFERS RULING on Defendants' motion for summary judgment and ORDERS supplemental briefing.

FACTUAL BACKGROUND

On April 7, 2003, Mallari established Medhealth Nursing, LLC, with himself as the sole member. Second Amended Complaint (SAC) at 9. The purpose of Medhealth was to obtain a license from the California Department of Public Health (CDPH) to operate a home health agency and to be accredited as a Medicare provider of medical services. Id. Mallari opened a Citibank checking account and rented an office in San Leandro on behalf of Medhealth. Id.

On May 1, 2008, Mallari applied on behalf of Medhealth for a license to operate a home health agency (HHA license). SAC, Ex. A. Mallari made the required payment of $3,867.14. Id. On

April 5, 2009, the CDPH denied his application. Mallari appealed the denial. SAC, Ex. B. On April 30, 2009, Mallari sent a letter to the CDPH requesting a hearing to contest the denial; the CDPH never held a hearing or resolved his appeal. Id. On February 17, 2010, Mallari sent another letter to CDPH asking it to either reverse the denial decision or to affirm it and refund the $3,867.14 application fee. SAC, Ex. C. Eventually, on July 9, 2010, Mallari reapplied and paid an additional $5,021.86 as a license fee. SAC at 3-4. The CDPH issued Medhealth an HHA license to operate at 318 Westlake Center, Suite 220, Daly City, California 94015 from March 9, 2011 to September 8, 2011. SAC, Ex. E at 1; Declaration of Collen Traynor (Traynor Decl.) ¶ 3. Medhealth appears to have received another HHA license effective September 9, 2011 to March 8, 2012. SAC, Ex. E at 2. On February 16, 2012, Mallari sent a letter to the CDPH stating that Medhealth's license would expire on March 9, 2012 and requesting assistance with the renewal of the license. SAC, Ex. F. Mallari claims that he received no response to his letter. SAC at 4. Apparently, the CDPH changed its office location during this time. Id. Mallari claims he never received notice of the CDPH's change in office location, nor did he receive forty-five days' notice of the expiration of his license and an application for renewal, as required by 22 C.C.R. § 74671(d). Id. As a result, Medhealth's HHA license expired on March 8, 2012 and Medhealth closed shop. Id. at 4-5.

On May 3, 2012, Mallari sent another letter to CDPH stating that Medhealth had moved to 433 Callan Avenue, Suite 206, San Leandro. Traynor Decl. ¶ 4; Mallari and his wife Carmelita (Ms.

2

1 Mallari), Director of Patient Care Services for Medhealth, went
2 to the office in an attempt to resolve the issue. Id. at 11; see
3 also Declaration of Carmelita Mallari (Mallari Decl.) ¶ 5. Ms.
4 Mallari asserts that Defendants showed dislike and arrogance
5 towards the Mallaris and that they engaged in a "heated exchange
6 of unsavory remarks." Mallari Decl. ¶ 5. Ms. Mallari paid a
7 license renewal fee of $4996.86 plus a fee of twenty-five dollars
8 for the location change. Id.; see also Docket No. 76, Exs. D-1
9 and D-2. Ms. Mallari asserts she provided the necessary
10 documentation and answered all of Defendants' questions regarding
11 Medhealth's operations. Mallari Decl. ¶ 6.

On August 7, 2012, the CDPH notified Medhealth that its HHA license was revoked. Traynor Decl. ¶ 8. Defendants assert that Medhealth's license was revoked because it was out of compliance with multiple regulations related to the operation of an HHA. Id. ¶ 7. Ms. Mallari alleges that Defendant Diana Marana of the CDPH called her on August 28, 2012 to tell her to submit a plan of corrections for the issuance of Medhealth's HHA license. Mallari Decl. ¶ 7. Ms. Mallari did so on September 4, 2012; however, Medhealth did not hear anything back from the CDPH. Id.

On May 23, 2013, Medhealth and Mallari filed this case in Alameda County superior court. Docket No. 1. On August 30, 2013, Defendants removed the case to federal court. Id. On September 9, 2013, Defendants brought a motion to dismiss the First Amended Complaint (FAC). Docket No. 8. On February 26, 2014, the Court granted Defendants' motion, dismissing all of Mallari's claims for failure to identify a specific civil rights injury and Medhealth's claim for failure to identify any

3

violation of its federal rights. The Court granted leave to amend. Docket No. 28 at 7-8. The Court also ruled that Medhealth may only file a Second Amended Complaint (SAC) through licensed counsel. Id. at 8. On March 17, 2014, Mallari filed a SAC asserting claims for a violation of § 1983, intentional infliction of emotional distress, negligence, and a violation of title 22, section 74669 of the California Code of Regulations. Docket No. 32. Defendants again moved to dismiss. Docket No. 34. The Court dismissed Mallari's § 1983 claim for failure to allege that he was "injured directly and independently of Medhealth." Docket No. 43 at 7. The Court dismissed Mallari's claims for intentional infliction of emotional distress and negligence for failure to allege sufficient facts to state a claim. Id. at 8. The Court dismissed Mallari's claim for a violation of section 74669 because he did not establish that the section provides for a private cause of action. Id. at 9. Because Mallari failed to correct the deficiencies of his complaint after being granted leave to amend, the Court dismissed his complaint with prejudice. Id. at 10. Mallari appealed.

The Ninth Circuit affirmed this Court's dismissal of Mallari's negligence and intentional infliction of emotional distress claims. Docket No. 51 at 2. With respect to this Court's dismissal of Mallari's § 1983 claim for lack of standing, however, the Ninth Circuit reversed, holding that Mallari adequately alleged that "defendants' conduct violated his own Fourteenth Amendment rights." Id. The Ninth Circuit reversed and remanded with respect to Mallari's § 1983 claim only. Id. at 3.

4

In the operative SAC, Mallari asserts a claim under 42 U.S.C. § 1983 alleging that Defendants violated his rights to due process and equal protection guaranteed by the Fourteenth Amendment. His claim is based on the allegation that Defendants did not follow the required procedure for reviewing and granting licenses. Mallari seeks the return of his application and renewal fees, as well as additional alleged actual and compensatory damages, expectation and consequential damages, punitive damages, and attorneys' fees and costs.

## LEGAL STANDARD

Summary judgment is appropriate only where the moving party demonstrates there is no genuine dispute as to any material fact such that judgment as a matter of law is warranted. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Material facts are those that might affect the outcome of the case, as defined by the framework of the underlying substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for either party. Id.

The moving party bears the initial burden of informing the district court of the basis for its motion and identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a disputed issue of material fact. Celotex, 477 U.S. at 323. In opposing the motion, the non-moving party may not rely merely on the allegations or denials in its pleadings, but must set forth "specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 248 (citing Fed. R. Civ. P. 56(e)). The court must construe the evidence in

the light most favorable to the non-moving party, making all reasonable inferences that can be drawn. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1289 (9th Cir. 1987).

DISCUSSION

I. Standing

Defendants contend that Mallari lacks standing to bring his § 1983 claim. The Ninth Circuit addressed this issue. Specifically, the Ninth Circuit reversed this Court's dismissal of Mallari's § 1983 claim for failure to allege that he was injured directly and independently of Medhealth. The Ninth Circuit noted:

> However, in the Second Amended Complaint, Mallari alleged that defendants' conduct violated his own Fourteenth Amendment rights. RK Ventures, Inc. v. City of Seattle, 307 F.3d 1045, 1057 (9th Cir. 2002) (shareholders of corporation alleged personal injury sufficient to confer § 1983 standing because they alleged violations of their own Fourteenth Amendment rights); Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1318-19 (9th Cir. 1989) (shareholder of corporation had § 1983 standing to bring First Amendment claim because the right that was allegedly violated belonged to the shareholder).

In RK Ventures, Inc., the Ninth Circuit provided the rule for shareholders' standing for § 1983 claims involving their corporations. 307 F.3d at 1057. Generally, "shareholders lack standing to assert an individual § 1983 claim based on harm to the corporation in which they own shares." Id. "A shareholder does have standing, however, when he or she has been 'injured directly and independently from the corporation.'" Id. The

6

shareholder must suffer injuries that are personal and distinct from those suffered by the corporation. Id.

In RK Ventures, Inc., the two principal owners of a nightclub asserted that a Seattle ordinance restricted their personal ability to play rap and hip hop music and to associate with African-Americans, as well as the nightclub's ability to do the same. Id. at 1054, 1057. The Ninth Circuit held that this was sufficient to show they had personal standing to claim that the ordinance violated their First and Fourteenth Amendment rights. Id. at 1057.

Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310 (9th Cir. 1989) presents another example of how § 1983 standing is applied to owners of a company. The Sorannos were the sole shareholders and officers of Soranno's Gasco, Inc. (Gasco). Id. at 1312. They alleged that the Air Pollution Control District violated their First Amendment rights when it suspended Gasco's petroleum bulk plant permits and discouraged customers from doing business with Gasco in retaliation for Mr. Soranno's public criticism of the district's policies. Id. The Ninth Circuit held that "the plaintiffs' argument that the defendants' actions were taken in retaliation for Soranno's exercise of first amendment rights clearly alleges a direct and independent personal wrong." Id. at 1318. Mr. Soranno had standing "to contest the deprivation of those rights." Id. at 1319.

The thrust of Defendants' argument is that it was Medhealth and not Mallari which applied for the license and paid all the application fees. Motion at 6. Thus, it was Medhealth who suffered a due process violation and not Mallari. As a result,

7

Defendants state that "it is difficult to imagine any claim for damages except for those suffered by Medhealth, if any." Id.

As the Ninth Circuit stated, however, this is not the only injury that Mallari alleges to have suffered. See Docket No. 51 at 2-3. Mallari contends that Defendants applied facially neutral laws regarding the issuance of an HHA license in a discriminatory manner against him. Opp. at 9-10. Specifically, he alleges that he was singled out by Defendants who "cancel[led] his business license without valid reasons." SAC at 7. Mallari posits several reasons for Defendants' unfair treatment. Id. For example, he states that Defendants discriminated against him because of "his candidness to argue his points whenever he is right," which could be construed to allege a violation of the First Amendment. Id. Additionally, his complaint suggests that Defendants discriminated against him based on the basis of "race, national origin, or alienage," which would constitute a violation of the Fourteenth Amendment. Id. at 6-7. Mallari and his family arrived from the Philippines in 2006. Id. at 7.

As the Ninth Circuit noted, if Mallari can prove that the above allegations are true, then Mallari may have suffered a "direct and independent personal wrong," giving him standing to pursue his claims. See Docket No. 51 at 2-3. Defendants' briefing does not address whether Mallari has evidence supporting his allegations of intentional discrimination in violation of the First Amendment or Fourteenth Amendment. The Court might benefit from additional briefing on this issue before this case proceeds to trial. Accordingly, the parties shall submit supplemental briefing according to the schedule at the conclusion of this

order.

## II. California Code of Regulations, title 22, section 74669

Defendants' motion for summary judgment also challenges Mallari's claim for a violation of section 74669. The Court already addressed this issue in its order granting Defendants' second motion to dismiss. As stated in that order, Mallari has not shown that section 74669 gives rise to a private cause of action. See Docket No. 43 at 9. The Ninth Circuit reversed and remanded only with respect to Mallari's § 1983 claim, and so Mallari's section 74669 claim is no longer in play.

## CONCLUSION

Within fourteen days of this order, Defendants shall file a brief not exceeding fifteen pages addressing whether Mallari has sufficient evidence to support his allegations of standing based on Defendants' intentional discrimination violating his Fourteenth Amendment rights. Within fourteen days of the filing this brief, Mallari shall file a brief not exceeding fifteen pages addressing the same issue and responding to Defendants' allegations. Defendants may file a five-page reply seven days thereafter. Mallari may seek assistance with his brief and related matters at the JDC Legal Help Center, which provides free information and limited-scope legal assistance to pro se litigants. More information about the JDC Legal Help Center can be found at http://www.cand.uscourts.gov/legal-help.

The Court provides the following warning to Mallari, which is similar to the one that was previously provided to him in the Court's January 3, 2018 order:

The defendants have made a motion for summary judgment by

which they seek to have your case dismissed.  A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case.  Rule 56 tells you what you must do in order to oppose a motion for summary judgment.  Generally, summary judgment must be granted when there is no genuine issue of material fact—that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary judgment is entitled to judgment as a matter of law, which will end your case.  When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says.  Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule [56(c)], that contradict the facts shown in the defendant's declarations and documents and show that there is a genuine issue of material fact for trial.  If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted, your case will be dismissed and there will be no trial.  Rand v. Rowland, 154 F.3d 952, 962-63 (9th Cir. 1998).

Mallari also must comply with the Civil Local Rules of this Court.  When opposing summary judgment, Civil Local Rule 7-5(a) requires that factual contentions be supported by an affidavit or declaration and by appropriate references to the record.  Extracts from depositions, interrogatory answers, requests for admission and other evidentiary matters must be appropriately authenticated by an affidavit or declaration.  An

affidavit or declaration may contain only facts, must conform as much as possible to the requirements of Federal Rule of Civil Procedure 56 and must avoid conclusions and argument. Civil L.R. 7-5(b). Any statement made upon information or belief must specify the basis for that information or belief. Id. Civil Local Rule 7-5(b) warns that an affidavit or declaration not in compliance with this rule may be stricken in whole or in part.

The pretrial conference is continued to May 15, 2018 at 2:30 pm. All other dates will remain the same.

The Clerk of the Court shall serve a copy of this order directly on Mallari at the following address: Danilo Mallari, 1861 Camino Real Way, Roseville, CA 95747.

The Clerk of the Court shall randomly assign this matter to a magistrate judge for a settlement conference, which should be completed no later than April 27, 2018.

IT IS SO ORDERED.

Dated: March 6, 2018

CLAUDIA WILKEN
United States District Judge

11